In re Stephen J. **LINSENMEYER** and Jan M. Linsenmeyer, Debtors.

No. 01–CV–73810–DT.
Bankruptcy No. 89–00691–R.

United States District Court,
E.D. Michigan,
Southern Division.

March 6, 2002.

Joseph Falcone, Joseph Falcone Assoc., Southfield, MI, for appellants.

Karen A. Smith, U.S. Department of Justice, Tax Division, Washington, DC, for appellee.

## OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S ORDER

FRIEDMAN, District Judge.

This is an appeal from an order of Bankruptcy Judge Steven W. Rhodes, denying the debtors' motion for reconsideration. The debtors' motion for reconsideration asked Judge Rhodes to change his earlier ruling denying their motion to appoint a trustee to file an amended tax return to indicate that the gain from a sale of the debtors' stock was property of the bankruptcy estate. The effect of this ruling is that the debtors themselves, and not the bankruptcy estate, are responsible for paying the federal tax on the gain. This appeal is brought by the debtors, Stephen and Jan Linsenmeyer; the appellee is the United States. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide this matter without oral argument.

This case began as a Chapter 11 bankruptcy matter in January 1989. Shortly thereafter, the Linsenmeyers commenced an adversary proceeding against the Monroe Bank and Trust and Ohio Citizens Bank ("MBT"). In March 1989, the Linsenmeyers and MBT entered into a settlement agreement, which the Bankruptcy Court approved, that resolved the adversary proceeding. Under this agreement, MBT loaned the Linsenmeyers approximately $1.8 million, which was to be used to fund their Chapter 11 reorganization plan. The Bankruptcy Court approved the reorganization plan in August 1989. The

$1.8 million loan was due in October 1989 and it was secured with various collateral, including shares of MBT stock owned by the Linsenmeyers. Under the settlement agreement, MBT could sell the stock if the Linsenmeyers failed to pay off the note on time. The Linsenmeyers missed the October 1989 deadline, but under the terms of the settlement agreement they requested and were granted a two-month extension by the Bankruptcy Court. When they also missed the December 1989 deadline, the bank sold the stock in January 1990.

In July 1990, the bankruptcy proceeding was converted from Chapter 11 to Chapter 7. The Chapter 7 trustee filed an income tax return on behalf of the bankruptcy estate for the period of July through December 1990. The gain from the stock was not reported on this return because the sale had occurred earlier in the year. Apparently, no one at that time complained to the Bankruptcy Court that the tax return filed by the trustee was incorrect. When the bankruptcy case was closed in January 1994, the trustee distributed the assets. The IRS was not paid any taxes on the gain from the sale of the stock.

In May 2000 the Linsenmeyers filed a motion to reopen the case to appoint a trustee to file an amended tax return for 1990. The Linsenmeyers sought the amended tax return to indicate that the gain was attributable to the estate, which may have enabled them to avoid any personal liability for the tax obligation. The United States opposed the motion on the grounds that the gain should be attributed to the Linsenmeyers themselves. The Bankruptcy Court did appoint a trustee. However, after conducting a hearing as to whether the gain was the estate's property or the debtors' property, the Bankruptcy Court denied the debtors' request to have the trustee file an amended tax return for the estate. The Bankruptcy Court subsequently denied the Linsenmeyers' motion for reconsideration.

*Analysis*

■ The only issue in this appeal is whether the Bankruptcy Court erred in determining that no trustee should be appointed to file an amended tax return because the gain from the sale of stock is not property of the bankruptcy estate. In other words, is it the Linsenmeyers or their bankruptcy estate that is responsible for reporting this gain? Since the Bankruptcy Court made a legal ruling, not a factual finding, the parties agree that this court's review is *de novo*.

■ The starting point is 11 U.S.C. § 1141(b), which states: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." The Sixth Circuit has noted that under § 1141(b), "upon confirmation of a Chapter 11 plan, unless there are contrary provisions, the property of the estate revests in the debtor along with normal ownership rights." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 462 (6th Cir.1991). In the present case, the debtors' Chapter 11 reorganization plan was confirmed by the Bankruptcy Court on August 28, 1989. Therefore, as of that date all of the property of the estate vested in the Linsenmeyers—"except as otherwise provided in the plan or the order confirming the plan."

Nothing in the second amended plan of reorganization indicates that the shares of stock at issue did not "vest" in the Linsenmeyers. The following provisions of the plan are relevant, but none are contrary to the general rule from 11 U.S.C. § 1141(b) that all property of the estate vests in the debtors upon confirmation.

Paragraph II(C) of the plan states:

The secured claim of Monroe Bank & Trust shall be paid according to the terms set forth with particularity in this Court's March 24, 1988 [sic: 1989] Order Approving Compromise of Adversary Proceeding, a copy of which is attached to this Plan and incorporated by reference as Exhibit "A."

Paragraph II(F) states:

All unsecured claims against the Debtors . . . are as follows:

(i) Contingent claims of Monroe Bank & Trust, Ameritrust Company, N.A., and Bruce D. and Julie M. Linsenmeyer–Dunbar: These claims are secured by collateral of the Debtors. The Debtors believe that in the event of a default in payment by them that the creditors would be fully paid by liquidating the collateral. . . .

And Article VII states:

All property of the Debtors shall revert to the Debtors upon the effective date of this Plan, and their business shall thereafter be conducted by the Debtors, and not be Debtors–In–Possession.

Since there is nothing in the plan indicating that the property did not vest in the debtors, § 1141(b) directs that the property did vest in the debtors upon confirmation of the plan. This being the case, the Bankruptcy Court clearly was correct in concluding that the shares of stock belonged to the Linsenmeyers when they were sold in January 1990. The sale occurred after confirmation of the Chapter 11 plan but before the bankruptcy proceeding was converted from Chapter 11 to Chapter 7. Therefore, the Bankruptcy Court was also correct in denying the Linsenmeyers' motion to appoint a trustee to file an amended 1990 tax return for the estate, since the gain from the stock sale was not attributable to the estate, but rather to the Linsenmeyers themselves.

The Linsenmeyers make several arguments in an effort to avoid this conclusion, but none of them are persuasive. First, they note that the plan states "[a]ll property of the Debtors shall revert to the Debtors upon the effective date of this Plan," whereas the statute uses the term "vest." This slight difference in terminology is insignificant. The fact of the matter is that by statute the property vests in the debtor upon confirmation of the plan, "[e]xcept as *otherwise* provided in the plan or the order confirming the plan" (emphasis added). And the statutory term "vest" is not contradicted by the word "revert" used in the settlement agreement.

The Linsenmeyers next argue that the shares of stock must still have been property of the estate following confirmation of the plan because the bank had to move the Bankruptcy Court to lift the automatic stay before it could sell the stock. According to this argument, the stay would not have applied, and would not have had to be lifted, if the stock had belonged to the Linsenmeyers instead of the bankruptcy estate.

While this argument has some superficial appeal, it is ultimately unpersuasive. To settle the adversary proceeding with the bank, the debtors agreed to pledge their stock as collateral to secure a loan. When the Chapter 11 plan was approved by the Bankruptcy Court, the title to the stock "vested" in (or, to use the term from the settlement agreement, "reverted" to) the debtors. The bank had to obtain relief from the automatic stay because it was seeking to sell property belonging to the debtors. As the Bankruptcy Court notes in its opinion, it has the authority to exercise control over property, including property that is not part of a debtor's bankruptcy estate, in order to ensure that a Chapter 11 plan is carried

out or to ensure that the Bankruptcy Court's orders are effectuated. For example, 11 U.S.C. § 1142(b) states:

The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 105(a) states:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. . . .

These statutory provisions give the Bankruptcy Court the authority to exercise some control over a debtor's property in order to ensure that the plan is carried out. This is a particularly appropriate exercise of the Bankruptcy Court's authority in the present case, where the parties, with the Bankruptcy Court's approval, agreed that stock would be pledged as collateral and that the bank could liquidate the stock in the event the debtor defaulted. In sum, the continuation of the automatic stay is irrelevant to the question of whether the stock "vested" in the debtors. The simple fact of the matter is that 11 U.S.C. § 1141(b) tells us that the debtors' property vested in them upon confirmation of the plan, and this is not changed by the fact that the stock remained subject to the automatic stay after confirmation.

The Linsenmeyers also argue that the Bankruptcy Court cannot use its authority under § 105(a) to extend the automatic stay over non-estate property. According to the debtors, if the automatic stay applied to the stock, then the stock had to be property of the estate. They cite 11 U.S.C. § 362(c)(1), which states that "the stay of an act against property of the estate . . . continues until such property is no longer property of the estate." However, this statute does not say that a stay cannot apply to property that is not part of a bankruptcy estate. The parties cite a few cases, none of which are directly on point, for their respective positions as to whether the Bankruptcy Court has such authority. In the end, it does not matter in the present case whether or not the Bankruptcy Court may exercise control over non-estate property by maintaining an automatic stay over such property. Whether the stay was lawfully in effect or not, the statutory command of § 1141(b) cannot be avoided.

■ Finally, the Linsenmeyers argue that the stock must have been property of the estate because otherwise the case could not have been converted from a Chapter 11 to a Chapter 7. The court must reject this argument. First, as the Bankruptcy Court notes at page 5 of its opinion, "11 U.S.C. § 1112, which governs conversion of a chapter 11 case to chapter 7, does not explicitly or implicitly require the existence of assets for a conversion." Moreover, the conversion of the case in July 1990 has no bearing the issue of whether the gain from the stock sale seven month earlier, in January 1990, was property of the estate or property of the debtors. The key to this case is § 1141(b), which specifically states that property of the bankruptcy estate vests in the debtor upon confirmation of a Chapter 11 plan, and in this case the debtors' reorganization plan was confirmed well prior to the stock sale. Further, even if a case cannot be converted from Chapter 11 to Chapter 7 unless there is property in the Chapter 11 estate to convert, the Linsenmeyers have not shown that there was no other property, besides the stock, in the estate at the time of the conversion.

### Conclusion

For the reasons stated above, the court shall affirm the Bankruptcy Court's order denying the debtors' motion for reconsideration. The Bankruptcy Court did not err in denying the debtors' motion to appoint a trustee to file an amended tax return for their bankruptcy estate. The stock at issue vested in the debtors in August 1989, when the Bankruptcy Court confirmed their reorganization plan. The gain from the sale of that stock in January 1990 is properly attributable to the Linsenmeyers themselves. That gain is not property of the bankruptcy estate. Accordingly,

IT IS ORDERED that the Bankruptcy Court's order denying the debtors' motion for reconsideration is affirmed.